# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

STEPHEN LYNN WOODS,

     Petitioner,

     v.                           Case No. 13-CV-973

PAUL KEMPER,
Warden, Racine Correctional Instutiton,

     Respondent.

---

## DECISION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

---

Stephen Lynn Woods ("Woods"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Woods was convicted of one count of armed robbery. (Habeas Petition at 2, Docket # 1.) Woods was sentenced to ten years of initial confinement, followed by five years of extended supervision. (Answer, Ex. A at 124, Docket # 12-1.) Woods alleges that his conviction and sentence are unconstitutional.

The parties have briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

A Milwaukee County jury found Woods guilty of one count of armed robbery with threat of force. (Docket # 12-1.) Woods' charges stem from an incident that occurred in the early morning hours of May 20, 2006. A convenience store employee saw a man bring a box of white Tic Tacs to the store's counter. (*State v. Woods*, Appeal No. 2010AP2039 (May 10, 2011), Answer, Ex. F, Docket

# 12-6 at 2.) As the employee went to scan the Tic Tacs, the man displayed a handgun and told her to empty the cash register drawer. (*Id.*) The employee gave the man the money, at which point he told her to get on the floor. (*Id.*) When the employee heard the man leave the store, she called 911. (*Id.*) The employee later realized that the box of white Tic Tacs was no longer on the counter. (*Id.*) The police arrived at the store shortly after the incident and found an unopened box of Tic Tacs in the parking lot, approximately thirty feet from the entrance. (*Id.*) Although a fingerprint was found on the Tic Tac box, the State did not match the print to Woods until two years later. (*Id.*) Upon doing so, the police presented the store employee with a photo display. (*Id.*)

The employee testified at Woods' trial that she selected one of the photographs because "there were certain features about [the individual's] face that were familiar to me, the jaw[] line specifically, expression in his face, just brought back like [that] feeling of the robbery again." (*Id.* at 2-3.) She described feeling terror upon seeing the photograph and explained it was a gut reaction. (*Id.* at 3.) She further testified that she could not, however, say with one hundred percent certainty that the individual in the photograph—who turned out to be Woods—was the robber. (*Id.*) During trial, the employee testified that Woods looked different in court than when she saw him in May 2006 and in the photograph as part of the display. (*Id.*) She further testified that seeing Woods in person did not give her the same feeling of terror she experienced when she saw his photograph. (*Id.*) She acknowledged having doubts as to whether Woods was the person responsible for the robbery. (*Id.*)

On direct appeal, Woods argued there was insufficient evidence to support his conviction. (Docket # 12-6.) The Wisconsin Court of Appeals upheld Woods' conviction (*id.*) and the Wisconsin Supreme Court denied his petition for review (Attachment to Habeas Petition at 7, Docket # 1-1.) Woods subsequently filed a *pro se* petition for state habeas corpus relief pursuant to *State v. Knight*,

- 2 -

168 Wis. 2d 509, 484 N.W.2d 540 (1992), arguing that his appellate counsel was ineffective for failing to pursue three particular issues on appeal. (*State ex rel. Woods v. Paquin*, Appeal No. 2012AP905 (Feb. 14, 2013), Answer, Ex. B, Docket # 12-2.) Specifically, Woods argued his appellate counsel should have challenged the photo array identification as unduly suggestive; he should have raised suppression of the employee's identification as unfairly prejudicial; and finally, appellate counsel should have challenged the State's alleged commentary on Woods' right to remain silent. (*Id.*) The Wisconsin Court of Appeals denied Woods' *Knight* petition on February 14, 2013. (*Id.*) The Wisconsin Supreme Court denied review on August 1, 2013. (Answer, Ex. C, Docket # 12-3.) Woods filed the instant petition for a writ of habeas corpus on August 28, 2013. (Docket # 1.)

## STANDARD OF REVIEW

Woods' petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. *Lindh v. Murphy*, 96 F.3d 856, 870-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). "Thus,

- 3 -

although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 120 S.Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ

- 4 -

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 120 S.Ct. at 1522), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

In his petition, Woods challenges his conviction on four grounds: (1) there was insufficient evidence to sustain his conviction; (2) ineffective assistance of appellate counsel; (3) the eye witness identification should have been suppressed because the photo array was unduly suggestive; and (4) the state violated his Fifth Amendment right against self-incrimination. (Docket # 1 at 6-10.) I address each in turn.

   *1.      Sufficiency of the Evidence*

Woods argues there was insufficient evidence to sustain his armed robbery conviction. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When insufficiency of evidence is asserted as the basis for a habeas petition, the petitioner must show "'upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt.'" *Cabrera v Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). The inquiry does not require the federal habeas court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the relevant question is whether, after viewing the evidence in

- 5 -

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *See Jackson*, 443 U.S. at 324 n.16. Under Wisconsin law, a defendant is guilty of armed robbery, Wis. Stat. § 943.32(1)(b) and (2), if the State proves that the defendant forcibly took property, owned by another, with the intent to steal, and used or threatened to use a dangerous weapon. Wis. JI-Crim 1480 (2009).

In this case, in considering Woods' sufficiency argument, the Wisconsin Court of Appeals used a standard consistent with *Jackson*. While the court of appeals did not cite to *Jackson*, it cited to *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990), which pronounces a state law standard that is the functional equivalent to *Jackson*:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

153 Wis. 2d at 507, 451 N.W.2d at 757-58 (1990) (internal citation omitted). As such, the court of appeals identified the correct governing legal rule. Thus, the only issue before this Court to resolve on habeas review is whether the state court unreasonably applied that rule to the facts of Woods' case or unreasonably determined the facts in light of the evidence presented. In making that determination, it is important to recall that in a federal habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints.

- 6 -

Woods principally relies on *United States v. Borum*, 380 F.2d 595 (D.C. Cir. 1967), in support of his sufficiency of the evidence argument. *Borum* involved a housebreaking where the complainant's home was entered and ransacked. Four fingerprints taken from one or two empty jars were identified as the defendant's. The complainant testified that the jars contained a valuable coin collection and that the coin collection was stolen. Testimony placed the defendant within a mile and a half of the complainant's home during the time of the break-in. The court of appeals for the District of Columbia found that while the government's evidence showed that the defendant touched the jars in question, there was no evidence, direct or circumstantial, that indicated the defendant touched the jars in the course of the housebreaking. Thus, the case should not have been submitted to the jury. 380 F.2d at 596-97.

Woods also cites several decisions subsequent to *Borum* for the proposition that the government must introduce evidence indicating that the objects on which the fingerprints were found were generally inaccessible to the defendant. *See Gibson v. Collins*, 947 F.2d 780 (5th Cir. 1991); *United States v. Bush*, 749 F.2d 1227 (7th Cir. 1984); *United States v. Cary*, 470 F.2d 469 (D.C. Cir. 1972); *United States v. Corso*, 439 F.2d 956 (4th Cir. 1971); *United States v. Collon*, 426 F.2d 939 (6th Cir. 1970); and *Stevenson v. United States*, 380 F.2d 590 (D.C. Cir. 1966). For the cases where the convictions were upheld, Woods argues that the object containing the defendant's fingerprints was generally inaccessible to the defendant, or circumstances were such that only the defendant could have left the print. (Petitioner's Br. at 23, Docket # 13.) Woods cites *Gibson*, *Cary*, and *Bush* for support. The conviction was also upheld in *Stevenson*. Woods argues that the cases in which the convictions were reversed, in contrast, involved common objects not unique to the crime scene. (Docket # 13 at 22.) Woods cites *Corso* and *Collon* as examples. Woods argues that the Tic Tac box

- 7 -

was not unique and easily transported; thus, the government must prove that the Tic Tac box was generally inaccessible to him. (*Id.* at 22, 24.)

Although Woods argues that *Borum*, *Corso*, and *Collon* should control this Court's analysis, even if it was controlling law of this circuit, this case is not a direct appeal from a conviction in federal district court. Rather, it is federal habeas corpus review of a state court conviction. Thus, my review is tempered by AEDPA's deferential constraints. As previously stated, when insufficiency of evidence is asserted as the basis for a habeas petition, the petitioner must show "'upon the record evidence adduced at the trial no rational trier fact could have found proof beyond a reasonable doubt.'" *Cabrera*, 324 F.3d at 533 (7th Cir. 2003) (citing *Jackson*, 443 U.S. 307, at 319, 324). Woods has failed to do this. The store employee identified Woods as the person who committed the robbery. She testified that when she saw Woods' photograph "there were certain features about his face that were familiar to me, the jawline specifically, expression in his fact, just brought back like feeling of the robbery again." (Sept. 15, 2009 Jury Trial Transcript, Answer, Ex. J, Docket # 12-11 at 74.) Although she also testified that she could not identify Woods with one hundred percent certainty (*id.* at 75), the man whose picture she picked out (who was later identified as Woods) made her feel the same kind of terror she felt when the robbery was committed (*id.*). As the Wisconsin Court of Appeals stated, whether the employee could make an accurate identification of Woods was a question for the jury to resolve in determining her credibility. (Docket # 12-6 at 5.)

Further, the employee testified that the suspect placed a box of white Tic Tacs on the counter. (*Id.* at 53.) When the suspect left, the Tic Tacs were gone. (*Id.* at 69.) A box of white Tic Tacs was found approximately 30 feet from the building in the parking lot. (Docket # 12-12 at 71.) The employee testified that the parking lot was swept every night. (Docket # 12-11 at 68.) An expert in

- 8 -

the field of fingerprint identification testified that the fingerprint found on the Tic Tac box matched Woods' "with no uncertainty." (*Id.* at 12, 23, 28.) Viewing the evidence in the light most favorable to the prosecution, as I must, I cannot conclude that no rational trier fact could have found the essential elements of the armed robbery beyond a reasonable doubt. As such, Woods cannot show that the court of appeals unreasonably applied *Jackson* to the facts of his case or unreasonably determined the facts in light of the evidence presented.

  2.  *Ineffective Assistance of Appellate Counsel*

  Woods argues that his appellate counsel was ineffective for failing to raise the following issues on direct appeal: the trial court's denial of Woods' motion to suppress the photographic identification evidence as unduly suggestive and as inadmissible under Wis. Stat. § 904.03 and the state's alleged violation of Woods' self-incrimination privileges under the Fifth Amendment. (Docket # 13 at 27.) To prevail on a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). Appellate counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised. *Williams v. Parke*, 133 F.3d 971, 974 (7th Cir. 1997). It is not necessary, however, that appellate counsel "raise every non-frivolous issue under the sun." *Mason*, 97 F.3d at 893. In addition, a petitioner demonstrates the requisite prejudice only when appellate counsel fails to raise an issue that "may have resulted in a reversal of the conviction, or an order for a new trial." *Id.*

  Besides making the conclusory statement that "[a]ll three issues are obvious and clearly stronger than the issue raised by appellate counsel," Woods offers no argument as to why these three issues were clearly stronger than the sufficiency of the evidence argument. (Docket # 13 at 27.)

- 9 -

Woods similarly makes no attempt to demonstrate prejudice beyond conclusory assertions. I will address each claim to determine whether Woods has shown ineffective assistance of appellate counsel.

### 2.1 Suggestiveness of Photo Array

Regarding the photo array issue, the court of appeals found that the photographic identification was properly admitted. (Docket # 12-2 at 4.) The court of appeals stated that to determine whether an out-of-court photographic identification was properly admitted, the court must first determine whether the defendant has shown the identification was impermissibly suggestive and second, if the defendant meets that burden, whether the State has shown that the identification was nevertheless reliable. (*Id.*) The court of appeals did not reach the second inquiry because it found the identification was not impermissibly suggestive.

In so holding, the court of appeals considered Woods' arguments that the photo array was unduly suggestive because (1) prior to showing the employee the photo array, the detective told her that a suspect had been identified by a fingerprint and (2) after the employee made her tentative identification, the detective told her that the person she selected was the one matched to the fingerprint. (*Id.*) The court of appeals rejected these arguments, finding that Woods did not claim that the detective somehow singled out his photograph as being the one of the suspect identified from the fingerprint prior to the employee selecting it, nor did he claim that the detective told the employee that the identified suspect was part of the photo array when the array was presented. (*Id.* at 5.) Further, the court of appeals found that because the employee could not identify Woods with one hundred percent certainty, it was "difficult, if not impossible, to conclude a photo array or in-court identification is impermissibly suggestive. . . ." (*Id.*)

- 10 -

In *Simmons v. United States*, 390 U.S. 377, 384 (1968), on which Woods relies, the Supreme Court found that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The court engages in a two-step analysis to determine whether the trial court erred in allowing identification testimony from a photo array. *United States v. Moore*, 115 F.3d 1348, 1360 (7th Cir. 1997). The first question is whether the identification procedure used was unduly suggestive. *Id.* If it is found unduly suggestive, the identification can still be admissible so long as the testimony was reliable, given the totality of the circumstances. *Id.* The court looks at five factors in assessing reliability: (1) the opportunity of the witness to view the event and the actor; (2) the degree of the witness' attention; (3) the accuracy of the witness' description; (4) the witness' level of certainty; and finally, (5) the time elapsed between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

Woods relies on the *Simmons* Court's statement that the chance of misidentification is heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. (Docket # *Id.* 13 at 9) (quoting *Simmons*, 390 U.S. at 383). Woods also relies heavily on *United States v. Goodman*, 797 F.2d 468 (7th Cir. 1986), saying that the "identification procedures used in [*Goodman*] are indistinguishable from the procedures used in the photo identification of Mr. Woods." (Docket # 13 at 10.) Although Woods is correct that the district court in *Goodman* found the pretrial identification unconstitutionally suggestive, this issue was not before the Seventh Circuit, who only addressed the admission of the in-court identification. Thus,

- 11 -

this Court does not have the benefit of the rationale of the district court in *Goodman* as to why the pretrial photospread was unconstitutionally suggestive. As such, *Goodman* is of limited value.

Woods does not challenge the procedure used by the Oak Creek Police Department in setting up the photo array. Indeed, the procedure itself does not indicate the photo array was unduly suggestive. The sheriff's department, not the Oak Creek Police Department, chose the photographs used in the photo array. (Docket # 12-12 at 129.) The sheriff's department obtained Woods' photograph, as well as photographs of other men with similar characteristics. (*Id.*) The trial judge noted that the photographs of all of the men in the photo array were "remarkably similar." (Transcript of Suppression Hearing, Answer, Ex. J, Docket # 12-10 at 28.) The photographs were placed in folders and shuffled so that the detective conducting the photo array did not know which folder contained Woods' picture. (Docket # 12-12 at 130, 133-34.)

Woods challenges the manner in which the photo array was presented to the store employee. As stated above, Woods argues that the fact the detective told the employee that a suspect had been identified by fingerprint prior to her viewing the photo array, and the fact that the detective told the employee after she identified Woods' photograph that she had chosen the photograph of the suspect, made the photo array unduly suggestive. I disagree. Woods is correct that the chance of misidentification is heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. *Simmons*, 390 U.S. at 383. Although the employee testified that she could not remember if she learned of the discovery of the fingerprint on the Tic Tac box before or after she viewed the photographs (Docket # 12-11 at 97), the detective conducting the photo array also testified that she told the employee that "evidence had come forward" before she viewed the photographs (Docket # 12-13 at 25). Even assuming the employee knew a fingerprint had

- 12 -

been found on a Tic Tac box before she viewed the photo array, this did not make the photo array unduly suggestive. The employee testified at trial that the detective never told her that a photograph of the suspect whose fingerprints were found was contained in the photo array. (Docket # 12-11 at 78-79.)

Although it was improper for the detective to confirm to the employee that she had chosen the photograph of the suspect, this does not make the photo array *per se* suggestive. *See, e.g.*, *United States v. Jarvis*, 560 F.2d 494, 500 (2nd Cir. 1977) (although stating that the court did "not approve the practice" of informing witnesses of the "correctness" or "incorrectness" of their pretrial identifications, nevertheless upholding admission of eyewitness identification because of corroborating palmprint evidence); *United States v. Stamper*, 91 Fed. Appx. 445, 462 (6th Cir. 2004) (unpublished) (although stating that it was "certainly improper" for agent to convey to witness that he had chosen the photograph of the suspect, finding that because the witness was informed *after* he had identified the defendant, it could not have rendered the photographic identification unduly suggestive). The detective testified at trial that she did not inform the employee that she had chosen the photograph of their suspect until after she identified Woods. (Docket # 12-12 at 137-38.) Further, another concern courts have expressed about police "confirming" a witness' photo choice is that the confirmation could taint a subsequent in-court identification because the witness may have the image of the photograph in her head instead of recalling the image from memory. *Swicegood v. Alabama*, 577 F.2d 1322, 1329 (5th Cir. 1978) (finding that witness' in-court identification could have been tainted because the police officer remarked to the witness after the after line-up that the identified person was the "suspect that we had"). As the Wisconsin Court of Appeals noted, even after the detective's

"confirmation," the employee still could not identify Woods with one hundred percent certainty at trial. Thus, the "confirmation" had no effect on the witness' ability to identify Woods in court.

Because I agree with the court of appeals that the photo array was not unduly suggestive, Woods has not shown that this argument was clearly stronger than the sufficiency of the evidence argument, nor has he shown the issue may have resulted in a reversal of the conviction or an order for a new trial.

### 2.2    Exclusion of Identification Under Wis. Stat. § 904.03

Woods also argues that appellate counsel should have addressed the trial counsel's alternate basis for suppression: Wis. Stat. § 904.03. Under that section, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Woods argues that the witness' identification was unreliable because she could not identify him with one hundred percent certainty. He cites *Neil v. Biggers*, 409 U.S. 188 (1972) for support. However, what Woods misunderstands is that the *Biggers* factors are only considered if the initial photo array was unduly suggestive in order to determine if the identification is otherwise reliable. *Id.* at 199-200. Just because the witness could not identify Woods with one hundred percent certainty does not provide a basis for suppression of the identification.

As long as the photo array was not unduly suggestive, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Alanis*, 109 F.3d 1239, 1242 (7th Cir. 1997) ("[I]n the absence of an improper out-of-court identification procedure, [defendant's] objection to the in-court identifications amounts to little more than a request that this court assume the role of the jury. We are not inclined to indulge this role confusion."); *United States v. Clay*, 165 F.3d 33, 1998 WL 847098, * 2 (7th Cir. 1998) (unpublished) (internal citations omitted) ("Indeed,

- 14 -

it is the jury which determines the weight to give the in-court identification. A less-than-positive identification may still be sufficient and reliable when considered with all other evidence; it is a matter of factual argument for the jury."). Woods had an opportunity to cross-examine the witness who made the identification. Woods has not shown that the admission of the witness' identification was improper under Wis. Stat. § 904.03. As such, Woods has not shown appellate counsel was ineffective for failing to raise this issue.

### 2.3 Fifth Amendment Argument

Finally, Woods argues that his appellate counsel should have raised the alleged violation of his Fifth Amendment right against self-incrimination. Woods argues that his Fifth Amendment right was violated when the prosecution elicited testimony from a detective that Woods' interview with police ended by Woods getting up and leaving the room, thereby improperly commenting on his right to remain silent. (Docket # 13 at 15-16.)

The court of appeals, citing *State v. Cooper*, 2003 WI App 227, ¶ 19, 267 Wis. 2d 886, 672 N.W.2d 118, stated that the test for determining whether there has been an impermissible comment on the defendant's right to remain silent is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent. (Docket # 12-2 at 7.) The court of appeals went on to state that the court must look at the context in which the statement was made in order to determine the manifest intention that prompted it and its natural and necessary impact on the jury. (*Id.*) Acknowledging that the entire transcript was not provided, the court of appeals found that "[a]s best we can tell, the question on redirect was not 'manifestly intended' as a comment on Woods' right

- 15 -

to remain silent, but, rather, rebuttal against Woods' claim that the detectives refused to allow Woods to answer their questions." (*Id.*)

Reviewing the complete transcript, the prosecution did not impermissibly comment on Woods' right to remain silent. During the direct examination of Detective Golombowski of the Oak Creek Police Department, a tape was played of the Oak Creek Police Department's interview with Woods. (Docket # 12-13 at 9.) During this interview, Woods stated that he did not know where Oak Creek was located. (*Id.* at 12.) On cross-examination, Woods' attorney asked the detective if Woods was cut off by the officers as he attempted to offer an explanation to the question of whether he had ever been to Oak Creek. (*Id.* at 23.) Woods' attorney asked this question a second time. (*Id.* at 27.) He then ended his questioning. On re-direct, the State immediately picked this line of questioning back up, asking "And then Mr. Woods, who got cut off, how did the conversation with Mr. Woods end? Did you and Detective Mendola get up and leave the room?" (*Id.* at 27.) To which the detective responded no, and stated that Woods left the room. (*Id.* at 27-28.) On re-cross, Woods' attorney repeatedly asked the detective about Woods' statements to the officers about whether he had ever been to Oak Creek. (*Id.* at 30-32.) Each time, the detective responded that they did not have an opportunity to explore further whether Woods had ever been to Oak Creek because he left the room. (*Id.*) On further re-cross, Woods' attorney again stated that Woods ended the interview. (*Id.* at 33.) During his closing argument, the prosecutor said:

> State:   . . . But again, he says, I don't know even where Oak Creek is; and this notion that he was cut off, again, a guy being interviewed by police can always end the conversation. That in and of itself, but for Mr. Nistler to say you cut him off, you cut him off, you cut him off, Well, guess what? He could have said at any point whatever it was he wanted to say . . . .

- 16 -

(*Id.* at 73.) During the defense's closing argument, Woods' attorney again mentions the fact that Woods was "cut off" while he was trying to explain whether he had ever been to Oak Creek. (*Id.* at 85.) Woods' attorney makes mention of this in response to the State's argument that Woods denied having ever been to Oak Creek. (*Id.*)

Thus, looking at the record in its entirety, language used by the State was not manifestly intended or was not of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent. First, Woods' counsel opened the door by making the first comment on cross-examination as to Woods getting "cut off" by police. It was only in response to this assertion that the State elicited testimony from the detective to rebut this fact by stating that it was Woods who "cut off" the conversation. Although Woods argues that the detective said Woods left the room nine times during her testimony (Docket # 13 at 16), all but one of the citations Woods gives are in response to questions by Woods' attorney. Second, it is clear from the transcript that the State was not commenting on Woods stopping the interview in order to create the impression that his silence indicates his guilt, but was trying to clarify the record as to who "cut off" the conversation in the context of whether Woods had ever been to Oak Creek. Because there was no violation of Woods' Fifth Amendment right, he has not shown that this issue was clearly stronger than the sufficiency of the evidence argument and has not shown that the issue may have resulted in a reversal of the conviction or an order for a new trial.

In conclusion, Woods has not shown that the court of appeals' decision on his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of *Strickland*, nor has he shown that the court of appeals' decision was based on an unreasonable

- 17 -

determination of the facts in light of the evidence presented in the state proceeding. Thus, Woods is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

      3.      *Constitutional Claims Based on Photo Array and Alleged Fifth Amendment Violation*

Woods also brings his photo array and Fifth Amendment claims as independent constitutional claims. The respondent argues that Woods cannot present his photo array and Fifth Amendment challenges as stand alone constitutional claims because they were brought in the context of a challenge to the effectiveness of appellate counsel. (Resp. Br. at 15, Docket # 15.) Woods argues that both claims were raised in the court of appeals and a decision was given on the merits; thus, both issues are stand alone constitutional claims. (Petitioner's Reply Br. at 6, Docket # 16.) To assert a claim in a federal habeas petition, a petitioner must have given the Wisconsin state courts a full and fair opportunity to review them. *Morrison v. Duckworth*, 898 F.2d 1298, 1300 (7th Cir. 1990). When a petitioner fails to give the state courts a full and fair opportunity to review his claims, a procedural default occurs. *Id.* A petitioner can only bring defaulted claim in a federal habeas petition if he can show cause and prejudice. *Id.*

Woods did not present his photo array and Fifth Amendment claims to the Wisconsin state courts on direct review. However, Woods argues his appellate counsel was ineffective when he chose not to pursue these claims. Counsel's failure to raise a claim can serve as cause for a procedural default only if counsel's failure to do so constitutes ineffective assistance of counsel. *See Murray v. Carrier*, 477 U.S. 478, 488–89 (1986); *see also Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999) ("Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default."*). Because this Court has already determined that Woods' appellate counsel was not ineffective in failing to raise these issues on direct review, Woods cannot show cause for the

- 18 -

procedural default. As such, the Court need not address the photo array and Fifth Amendment claims as independent constitutional claims.

However, I recognize that other courts in this district have addressed the substance of claims raised in *Knight* petitions without first analyzing cause for the default. *See Searcy v. Clements*, No. 09-CV-382, 2012 WL 719002, * 3 (E.D. Wis. Mar. 5, 2012) ("[I]t is the conclusion of this court that the filing of a petition for a writ of habeas corpus with the Wisconsin Supreme Court will be sufficient to exhaust claims that remain unexhausted due solely to appellate counsel's failure to include them in the petition for review filed as part of a direct appeal of a conviction."); *McGee v. Bartow*, No. 06-CV-1151, 2007 WL 1062175, * 4 (E.D. Wis. Apr. 3, 2007) ("The fact that [petitioner's] attorney did not raise the issue on direct appeal is of no consequence since [petitioner] presented the issue to the Wisconsin courts in the context of an ineffective assistance of counsel claim").

Accordingly, even examining the claims on the merits, Woods would not be entitled to habeas relief. Woods must show that the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. Regarding Woods' photo array claim, the procedure for challenging pretrial identification procedures under federal law mirrors the two-step analysis utilized by the Wisconsin Court of Appeals in Woods' *Knight* petition. *See Neil v. Bigger*s, 409 U.S. 188, 198-200 (1972); *McGowan v. Miller*, 109 F.3d 1168, 1173 (7th Cir. 1997). Thus, the question is whether the Wisconsin Court of Appeals unreasonably applied the applicable law or unreasonably determined the facts. For the reasons discussed above, I have already determined that the photo array was not unduly suggestive. Thus,

- 19 -

Woods has not shown that the court of appeals unreasonably applied the law or unreasonably determined the facts as to his photo array claim. Thus, this claim fails on the merits.

Regarding his Fifth Amendment claim, the court of appeals found that the prosecution's question on redirect was not "manifestly intended" as a comment on Woods' right to remain silent and it did not appear that the jury would have "naturally and necessarily" taken the prosecution's question as a comment on Woods' right to remain silent. The court of appeals' finding does not run afoul of Supreme Court precedent that states that a prosecutor is prohibited from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt. *See United States v. Robinson*, 485 U.S. 25, 32 (1988); *see also Bergmann v. McCaughtry*, 65 F.3d 1372, 1376-77 (7th Cir. 1995) (stating that as a predicate to relief based on the right to remain silent, the defendant must establish a reference to his silence, which is determined by deciding whether it was the prosecutor's manifest intention to refer to the defendant's silence or the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's silence).

Further, Woods has not shown the court of appeals unreasonably applied the law or unreasonably determined the facts in light of the evidence presented. As discussed above, it is clear from the transcript that the State was not commenting on Woods stopping the interview in order to create the impression that his silence indicates his guilt, but was trying to clarify the record as to who "cut off" the conversation in the context of whether Woods had ever been to Oak Creek. This is a proper application of Supreme Court law to the facts of the case. *See Robinson*, 485 U.S. at 32 ("[W]here as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege."). As such, Woods' Fifth Amendment claim fails on the merits.

- 20 -

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

In this case, reasonable jurists would not find the decision to deny the petition as to Woods' sufficiency of the evidence and ineffective assistance of counsel claims debatable or wrong. First, as to the sufficiency of the evidence claim, it is not debatable the Wisconsin Court of Appeals identified the correct governing legal rule in citing *Poellinger*, which pronounces a state law standard that is the functional equivalent to *Jackson*. Further, it is not debatable that the court of appeals did not unreasonably apply the *Jackson* rule to the facts of Woods' case. As to the ineffective assistance of appellate counsel claim, it is not debatable the Wisconsin Court of Appeals identified the correct

governing legal rule in citing state law cases that articulate the *Strickland* standard. Further, it is not debatable that the court of appeals reasonably applied the *Strickland* standard to the facts of Woods' case.

Regarding the denial of Woods' photo array and Fifth Amendment claims on the grounds of procedural default, jurists of reasons would not find it debatable that Woods' petition does not state a valid claim of the denial of a constitutional right.

For these reasons, I will deny Woods a certificate of appealability. Woods retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.


Dated at Milwaukee, Wisconsin this 24th day of February, 2014.

BY THE COURT


*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge
